No. 26-2031

**IN THE UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT**

STATE OF CALIFORNIA; COMMONWEALTH OF MASSACHUSETTS; STATE OF NEVADA; STATE OF WASHINGTON; STATE OF ARIZONA; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF DELAWARE; DISTRICT OF COLUMBIA; STATE OF HAWAII; STATE OF ILLINOIS; STATE OF MAINE; STATE OF MARYLAND; STATE OF MICHIGAN; STATE OF MINNESOTA; STATE OF NEW JERSEY; STATE OF NEW MEXICO; STATE OF NEW YORK; STATE OF NORTH CAROLINA; STATE OF OREGON; STATE OF RHODE ISLAND; STATE OF VERMONT; COMMONWEALTH OF VIRGINIA; STATE OF WISCONSIN; JOSH SHAPIRO, in the official capacity as Governor of the Commonwealth of Pennsylvania,

Plaintiffs - Appellees,

v.

UNITED STATES POSTAL SERVICE; DAVID STEINER, in the official capacity as Postmaster General, Chief Executive Officer of the Postal Service, and Member of the Postal Service Board of Governors; DOUG TULINO, in the official capacity as Deputy Postmaster General, Chief Operating Officer and Chief Human Resources Officer of the Postal Service and Member of the Postal Service Board of Governors; AMBER MCREYNOLDS, in the official capacity as Chair of the Postal Service Board of Governors; DEREK KAN, in the official capacity as Vice Chairman of the Postal Service Board of Governors; RONALD STROMAN, in the official capacity as a Member of the Postal Service Board of Governors; DANIEL TANGHERLINI, in the official capacity as a Member of the Postal Service Board of Governors,

Defendants - Appellants,

STATE OF MISSOURI; STATE OF INDIANA; STATE OF MONTANA; STATE OF LOUISIANA; STATE OF KANSAS; STATE OF NEBRASKA; STATE OF ALABAMA; STATE OF FLORIDA; STATE OF TEXAS; STATE OF OKLAHOMA; STATE OF SOUTH DAKOTA; STATE OF SOUTH CAROLINA,

Defendants.

On Appeal from the United States District Court for the District of Massachusetts

**FEDERAL-DEFENDANTS' REPLY IN SUPPORT OF EMERGENCY MOTION FOR STAY PENDING APPEAL**

BRETT A. SHUMATE
*Assistant Attorney General*
ERIC D. MCARTHUR
*Deputy Assistant Attorney General*
BRAD HINSHELWOOD
LAURA E. MYRON
JENNIFER L. UTRECHT
SOPHIA SHAMS
*Attorneys, Appellate Staff*
*Civil Division, Room 7213*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514- 2495*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........ 1

ARGUMENT ........ 2

I. Defendants are Likely to Succeed on the Merits Because The Final Rule is Lawful ........ 2

II. The Remaining Factors Warrant a Stay ........ 9

CONCLUSION ........ 11

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## INTRODUCTION

The responses of the State (*California v. USPS*, No. 26-2031) and organizational plaintiffs (*League of Women Voters (LWV) v. Trump*, No. 26-2029) largely repeat the errors of the district court. Though plaintiffs notably retreat from their constitutional arguments—with the State plaintiffs now disavowing any interest in the "semantic question whether the Rule is best understood as 'regulat[ing] state administration of elections' or 'regulat[ing] the mail,'" *California* Resp. 8, and the organizational plaintiffs devoting just two pages to the circular proposition that the Rule is unconstitutional because Congress did not authorize it, *LWV* Resp. 19-21—plaintiffs continue to distort the Rule's modest requirements and misread the general statutory rulemaking authority Congress granted to the U.S Postal Service (USPS). That rulemaking authority plainly encompasses the modest envelope design and reporting requirements the Rule imposes for federal ballot mail, just as it has authorized other regulations on categories of mail raising unique issues that USPS has addressed in the past.

The equities also weigh in favor of a stay. As the Supreme Court has already recognized in this case, USPS's inability to implement its Rule constitutes irreparable harm and warrants a stay. *See Trump v. California*, No. 26A124, 2026 WL 2473573, at *4 (U.S. Aug. 24, 2026). Given the government's showing on both the merits and irreparable harm—the two "most critical" stay factors, *Nken v. Holder*, 556 U.S. 418, 434 (2009)—plaintiffs can have no interest in avoiding compliance with a lawful rule based on an erroneous injunction that inflicts irreparable harm on the government.

## ARGUMENT

### I. Defendants are Likely to Succeed on the Merits Because the Final Rule is Lawful

Plaintiffs' various arguments that the Rule is unlawful largely ignore USPS's broad authority to adopt rules and regulations. Congress authorized USPS to make "such rules and regulations, not inconsistent with this title, as may be necessary in the execution of its functions," 39 U.S.C. § 401(2), as well as "all other powers incidental, necessary, or appropriate to the carrying on of its functions or the exercise of its specific powers." *Id.* § 401(10). Those specific powers include the power "to provide for the collection, handling, transportation, delivery, forwarding, returning, and holding of mail, and for the disposition of undeliverable mail." *Id.* § 404(a)(1). That authority plainly encompasses a rule governing the design of envelopes and the verification of envelope barcodes.

Plaintiffs contend that these provisions do not authorize the Rule. But they face a steep climb, as Congress has expressly exempted USPS from review under the Administrative Procedure Act (APA). 39 U.S.C. § 410(a); *Mittleman v. Postal Regul. Comm'n*, 757 F.3d 300, 305, 307 (D.C. Cir. 2014). Plaintiffs' claims thus must proceed as statutory *ultra vires* claims—a standard the Supreme Court has likened to "a Hail Mary pass." *NRC v. Texas*, 605 U.S. 665, 681-82 (2025). Under this standard, a plaintiff must demonstrate that "an agency has taken action entirely in excess of its delegated powers

and contrary to a specific prohibition in a statute." *Id.* at 681 (emphasis and quotation marks omitted).

Plaintiffs contend that the ordinary *ultra vires* standard applies only where "plaintiffs sued outside an otherwise available judicial review scheme" (*California* Resp.17; *LWV* Resp. 8). But the Supreme Court has made clear that this standard applies to *all* attempts to "end-run … the limitations of judicial-review statutes." *NRC*, 605 U.S. at 681. That equally occurs where, as here, Congress has expressly eliminated judicial review under the APA. Litigants cannot obtain a *more favorable* standard of review for a statutory claim because Congress *eliminated* judicial review for that claim rather than merely *channeled* it. Neither *Trump v. Cook,* 146 S. Ct. 2234 (2026), nor *Youngstown Sheet & Tube Co. v. Sawyer,* 343 U.S. 579 (1952), suggest otherwise. Neither of those cases concerned the authority to review an agency action exempted from APA review. Rather, those cases concerned actions by the President, who is not subject to the APA in the first place. *Cook,* 146 S. Ct. at 2246-48 (discussing judicial review of the President's removal determination); *see Youngstown*, 343 U.S. at 584 (describing both issues in the case as pertaining to the President's order and powers).

Under any standard, however, plaintiffs' claims fail. As defendants' motion explained (at 12-15), USPS has previously used this authority to adopt a variety of rules for particular categories of mail that raise particular issues, such as replica explosives and cremated remains. USPS has also adopted other procedures related to election mail; for instance, USPS has long provided that absentee balloting materials "must not

be detained or treated as unpaid mail" and must be "promptly dispatched and delivered to the addressees" even if a mailer does not affix the necessary postage. USPS, *Postal Operations Manual* § 171.3, *available at* https://perma.cc/HY9N-TJ6Q. Similarly, plaintiffs' co-counsel and co-plaintiffs have advocated for and benefited from specific ballot-mail envelope design elements and the prioritization of such mail. *See NAACP v. USPS*, 2026 WL 1893762, at *1 (D.D.C. July 1, 2026); Kit 600 at 4, https://about.usps.com/kits/kit600.pdf.

Plaintiffs attempt to distinguish prior election-specific mail handling efforts by stating that they either were non-binding guidance or else would not result in the rejection of election mail, or more generally because those efforts, in plaintiffs' view, facilitated voting by mail. *E.g.*, *LWV* Resp. 16; *California* Resp. 5. But there is no material distinction between those actions and this one. In each case, USPS adopted procedures that are necessary or appropriate to "provide for the collection, handing, transportation, delivery, forwarding, returning, and holding of mail," 39 U.S.C. § 404(a)(1), a fact which does not turn on whether the rules are permissive or mandatory or the goals those rules pursue. If USPS has *no* legal authority to make any rules specific to election-related mail—as seems to be plaintiffs' theory—it is hard to understand how those longstanding efforts would be lawful.

The same points also address plaintiffs' repeated observations that USPS will reject mail that does not comply with the Rule's requirements. Failure to follow certain mailing rules may result in mail not being sent. That does not mean that all rules

governing the mail are converted into election regulations if the mailpiece is election related. And in any event, any noncompliant mail can be corrected and then mailed. *Ballot Mail for Federal Elections*, 91 Fed. Reg. 54,966, 54,974 (Aug. 26, 2026).

Plaintiffs are likewise wrong in asserting that the Rule creates a new category of "nonmailable" matter. *California* Resp. 8-12; *LWV* Resp. 9-13. At the outset, this argument is beside the point, as the provisions where Congress has deemed certain materials nonmailable do not purport to be exclusive, and thus could not foreclose USPS from adopting conditions for sensitive mailings even if deemed analogous to a "nonmailability" rule. *See, e.g.*, 39 U.S.C. §§ 3001, 3002, 3002a, and 3015. But the Rule creates no such nonmailability rule in any event. The Final Rule merely governs the design of envelopes and the verification of envelope barcodes. Ballot mail remains deliverable; in fact, USPS intends to process and deliver as many lawful ballots as the States wish to send. If USPS refused to deliver unstamped election mail from States to voters, that would not render unstamped election mail "nonmailable" or otherwise violate the statutory rules governing nonmailable matter.

Plaintiffs' observation that some of the nonmailability provisions adopted by Congress impose conditions rather than outright bans on mailing reflects a basic logical fallacy. That Congress allowed some mailpieces that it deemed "nonmailable" to be mailed on certain conditions does not imply that any additional condition imposed on any mailable material somehow violates the nonmailability provisions. Indeed, that approach would render USPS powerless to address matters like replica explosives or

cremated remains, which may likewise only be mailed on certain conditions. While plaintiffs describe these examples as simply applications of 18 U.S.C. § 1716(a), *California* Resp. 10-11; *LWV* Resp. 13, that is manifestly incorrect. The salient point about *replica* explosives is that they are *not* explosives and thus not expressly defined as nonmailable material under 18 U.S.C. § 1716(a). Nor do cremated remains fall within those categories or any of the relevant provisions. Plaintiffs' efforts to shoehorn those examples into § 1716(a) by relying on language in that provision that prohibits mailing matter that "threaten[s] to 'injure' USPS workers or 'injure the mails or other property,'" *California* Resp. 10-11, likewise fails: for instance, replica explosives do not pose that threat on their own, but they can disrupt postal operations, which is why USPS has addressed them using its general rulemaking authority.

But even if plaintiffs were correct about the scope of § 1716(a), that would only support the Rule here. Plaintiffs' capacious understanding of what materials may threaten to "injure the mails or other property" would equally encompass ballot mail. USPS has a clear interest in ensuring the timely delivery of ballot mail given state deadlines, *e.g.*, *Watson* v. *Republican Nat'l Comm.*, 146 S. Ct. 2165, 2171 (2026); *see* 91 Fed. Reg. at 54,974, and USPS has an interest in facilitating law enforcement efforts, reducing the risk of fraud, and helping protect the integrity of federal elections, *see* 91 Fed. Reg. at 54,969; *Crawford* v. *Marion Cnty. Election Bd.*, 553 U.S. 181, 197 (2008); *Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 672 (2021) ("Fraud can affect the outcome of a close election, and fraudulent votes dilute the right of citizens to cast ballots that carry

appropriate weight."). Plaintiffs question the relevance or strength of USPS's interest in preventing fraud, *e.g.*, *LWV* Resp. 14-15, *California* Resp. 7-8, but USPS obviously has an interest in reducing use of the mail for fraudulent purposes of all kinds. As defendants noted (Mot. 11), USPS would be equally empowered to impose special design and registration rules for envelopes used to send solicitations to places, such as elder-care homes, that are particularly susceptible to fraud, even beyond the specific requirements plaintiffs identify (*LWV* Resp. 15; *California* Resp. 12 n.6) related to false invoices or sweepstakes. And there should be no doubt that election-related crimes would be of particular concern. USPS need not wait until fraud occurs to take prophylactic steps to institute reasonable measures "to facilitate enforcement of federal law." 91 Fed. Reg. at 54,969.

Plaintiffs' invocation of the major questions doctrine similarly falls flat. As defendants have explained, Mot. 14; *see supra* pp. 2, 4-5, the Final Rule in no way regulates voter eligibility, the States' authority to regulate elections, or any other potentially "economic or politically significan[t]" matter that would trigger the major questions doctrine. *Learning Resources, Inc.* v. *Trump,* 607 U.S. 229, 246 (2026) (plurality opinion). All the Rule requires is that States abide by certain design and data-reporting requirements with respect to ballot mail. Those requirements, which are much more akin to requiring postage or a clear, legible address of the intended recipient, are modest. Holding otherwise, as the district court did, would effectively exempt states from having to conform their election mail to any regulation of mail delivery by USPS.

Finally, the *California* plaintiffs raise (at 14-19) several arguments not considered by the district court. Those arguments do not provide a basis to affirm the injunction, *see New Comm Wireless Servs., Inc. v. SprintCom, Inc.*, 287 F.3d 1, 13 (1st Cir. 2002); *Sherley v. Sebelius*, 644 F.3d 388, 397-98 (D.C. Cir. 2011), but those arguments in any event fail. At the outset, the contention that the Rule is arbitrary and capricious under the APA ignores that (as discussed) the APA does not apply to USPS. The only exception plaintiffs identify is that the APA applies to "proceedings concerning the mailability of matter." 39 U.S.C. § 3001(m); *see California* Resp. 13. But the Rule is not such a proceeding, and enforcing design, preparation and reporting requirements does not render unlabeled or improperly labeled envelopes "nonmailable," as the cremated remains and replica explosive examples discussed above illustrate, and as USPS recognized here. *See* 91 Fed. Reg. at 54,973. Nor does the Rule constitute one of the types of proceedings covered by 39 U.S.C. § 3001(m). *See id.* §§ 3005, 3007, 3012(c) (examples of proceedings).

Plaintiffs' assertion that USPS failed to follow procedures for seeking an advisory opinion from the Postal Regulatory Commission, 39 U.S.C. § 3661, likewise fails. Such claims must be presented to the Commission, and the district court lacked jurisdiction to entertain them. *See id.* §§ 3662(a), 3663; *New York v. Trump*, 181 F.4th 132, 137-42 (D.C. Cir. 2026). And in any event, the provision plaintiffs invoke—which requires an advisory opinion for changes "in the nature of postal services which will generally affect

service on a nationwide or substantially nationwide basis," 39 U.S.C. § 3661(b)—is not triggered here, as USPS explained. 91 Fed. Reg. at 54,976.

## II. The Remaining Factors Warrant a Stay

The district court's order imposes irreparable harm on the federal government. As the Supreme Court recognized earlier in this litigation, "[t]he Government is likely to suffer irreparable harm without a stay" "[b]ecause reversal of the District Court's judgment" against implementation of the Rule "would come too late for the 2026 midterms." *Trump v. California,* No. 26A124, 2026 WL 2473573, at *4 (U.S. Aug. 4, 2026). Those harms accrue daily: there is no dispute that ballots are already being mailed in at least one State, with more to come in the coming days.

Plaintiffs suggest that because States may still voluntarily comply with the Rule, that somehow absolves any harm to the government caused by the preliminary injunction. That is wrong. The preliminary injunction prohibits USPS from giving meaningful effect to the Rule, precluding USPS from refusing to mail non-compliant materials. The injunction thus "improperly intrudes on a coordinate branch" and warrants a stay. *California,* 2026 WL 2473573, at *4 (quoting *Trump v. CASA, Inc.*, 606 U.S. 831, 859 (2025)).

Plaintiffs, by contrast, chiefly assert that compliance with the Rule will create practical difficulties. As defendants have explained, *see* Mot. 18-20, the asserted economic and administrative difficulties are largely speculative and undermined by the fact that the States with the closest deadlines have not suggested any such hardship in

having to comply with the Rule. But more crucially, the government's showing of both likelihood of success on the merits and irreparable harm—the two "most critical" stay factors, *Nken*, 556 U.S. at 434; *see California,* 2026 WL 2473573, at *4—control here. The Rule is clearly lawful, and the district court's injunction imposes serious irreparable injury on the government. Plaintiffs have no legal entitlement to a preliminary injunction merely to avoid harms associated with complying with a *lawful* regulation. And the district court certainly lacked authority to issue such an injunction preventing the Executive Branch from executing its lawful policies simply because there may be practical difficulties associated with compliance.

At a minimum, a stay is warranted as to the injunction's extension beyond the *California* plaintiffs. Universal relief here could be premised only on the *LWV* plaintiffs, but they do not have an Article III injury at all. *See* Mot. 20-21. Those plaintiffs' assertions regarding voter education and advocacy efforts are exactly the sort of "public advocacy and public education" efforts that cannot confer standing, *see FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 394 (2024), and they otherwise depend on speculation about potential injuries to members, many unidentified, *see* Mot. 20.

## CONCLUSION

This Court should grant a stay pending appeal and administrative stay.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*
ERIC D. MCARTHUR
*Deputy Assistant Attorney General*
BRAD HINSHELWOOD
LAURA E. MYRON
JENNIFER L. UTRECHT

*/s/ Sophia Shams*
SOPHIA SHAMS
*Attorneys, Appellate Staff*
*Civil Division, Room 7213*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-2495*

September 2026

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing reply complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2)(C) because it contains 2,556 words. The reply complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5)-(6) because it has been prepared using Microsoft Word 2016 in proportionally spaced 14-point Garamond typeface.

*/s/ Sophia Shams*
Sophia Shams

## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2026, I electronically filed the foregoing reply with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system. Participants in the case are represented by registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*/s/ Sophia Shams*
Sophia Shams